IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - -

DIANE HAMILTON, ET AL,

VS.

PARTNERS HEALTHCARE SYSTEM, INC., ET AL.,
DEFENDANTS

- - - - - - - - - - - - - - - - - - - - - - -

CIVIL ACTION

No. 09-11461-DPW

No. 09-11725-DPW

STATUS/SCHEDULING CONFERENCE

JUNE 9, 2011

2:10 P.M.

BEFORE DISTRICT COURT JUDGE

DOUGLAS P. WOODLOCK

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA 02210

VALERIE A. O'HARA
OFFICIAL COURT REPORTER

A P P E A R A N C E S:

FOR THE PLAINTIFF:

Thomas & Solomon LLP, by PATRICK J. SOLOMON, ESQ. and JESSICA L. WITENKO, ATTORNEY, 693 East Avenue, Rochester, New York 14607

FOR THE DEFENDANT:

Littler Mendelson, P.C., by LISA A. SCHRETER, ATTORNEY, ANGELO SPINOLA, ESQ. and PATRICK J. SOLOMON, ESQ., 3344 Peachtree Road, Suite 1500, Atlanta, Georgia 30326

Littler Mendelson P.C., by DAVID C. CASEY, ESQ., One International Place, Suite 2700, Boston, Massachusetts 02110

ALSO PRESENT: Julie Chattopadhyay, in-house counsel

PROCEEDINGS

THE CLERK: All rise. This Honorable Court is now in session. You may be seated. Calling Civil Action 09-11461 and 09-11725, Diane Hamilton vs. Partners Healthcare Systems Inc., et al.

MR. SOLOMON: Good afternoon, plaintiff's counsel, Patrick Solomon and my colleague, Jessica Witenko for the plaintiffs.

MS. SCHRETER: Good afternoon, your Honor, Lisa Schreter on behalf of Partners Healthcare. I'm joined to my right by David Casey from our Boston office, Mr. Spinola to his right, and to his right is Julie Chattopadhyay, who's with the Partners Healthcare System in-house.

THE COURT: Well, let me tell you how I think I'd like to proceed in this. I want to set the motions for judgment on the pleadings down for July 27th, and I set that date, if there's a vacation problem, tell me, and I'll accommodate that, but that was what works for me. Is that workable?

MS. SCHRETER: I don't believe that's a problem, your Honor.

MR. SOLOMON: I don't think that's a problem, your Honor.

THE COURT: Okay. Well, having tested you on that and being reminded by Mr. Lovett that that date does not work

for me, can I move it to August 3rd?

MS. SCHRETER: That would be fine for us, your Honor.

MR. SOLOMON: Fine for the plaintiffs, your Honor.

THE COURT: All right. So we'll set it down for August 3rd at 2:30. Now I think I want to set virtually everything else off that with this exception that I do want to stay discovery in the further briefing on the certification motions until I've sorted through the state of the pleadings here.

As to consolidation, I'll consolidate it only to the degree that I'll hear the motions at the same time. I want to see how it sorts out to see whether further consolidation is necessary in this case, and so to work my way through the outstanding motions, we've set No. 115 in the 09-11461 case down for August 3rd for hearing, and the parallel motion in 09-11725 will also be heard on that day, and to that degree, they're consolidated for hearing, and so to that degree I allow the motion No. 141 and the motion in support of the motion to consolidate the related actions solely for the purpose of the hearing and to stay discovery and the filing of briefing of certification motions until I've sorted through at that time, so it's allowed without prejudice to further refinement.

With respect to the motion to expedite, I want to

hear that on the same day as well. All of this depends upon the nature of the pleadings in the case and whether or not they're going to successfully permit continuation of the case or some part of the case.

I have the defendant's motion to file supplemental authority that was just filed I guess today. That's document No. 120, and that's allowed as well. Now, let me understand the posture of Manning. Is there any appeal in Manning now? One part of it stayed alive, as I understood it, but maybe you can tell me.

MR. SOLOMON: Sure. There is an appeal, it's not fully briefed yet on the state law claims, preemption.

THE COURT: The preemption one, it was the March decision that Judge Zobel had?

MR. SOLOMON: That would have been Judge Saylor in the UMass.

MS. SCHRETER: He's asking about Manning.

THE COURT: I was asking about Manning.

MR. SOLOMON: I'm sorry, yes, correct. The status of Manning is that in the Caritas matter, there was an appeal that has been argued. We submitted supplemental briefing for Circuit's request, and we're waiting on a decision on that. The BMC matter, BMC, we've just filed amended pleadings.

THE COURT: Because she permitted you to file amended pleadings. You should understand I'm not going to

permit amended pleadings in this matter. These are the pleadings. We have been around on this enough, so this case will rise and fall on the state of the pleadings after two years.

MR. SOLOMON: If I may be heard on that, your Honor, just briefly, very briefly, I would say.

THE COURT: What do you want, do you want to rebrief the thing altogether?

MR. SOLOMON: The case has taken a long time to get to a preliminary motion to dismiss stage, and the parties spent a long time in mediation, and as part of that mediation, we agreed as a courtesy to the defendants to dismiss the individual defendants. That was never approved by the Court, so the individual defendants are still around, but there certainly has been a lot of case law change in the last two years, particularly in the District of Massachusetts.

THE COURT: But you were afforded an opportunity by the defendants to tidy up your pleadings and afforded that opportunity in April, and so now you tell me when I set it down for hearing for judgment on the pleadings that you want to be able to take my temperature on the judgment on the pleadings and then file another complaint?

MR. SOLOMON: We didn't feel that we would be in a position with the Court, the defendants were asking us to do that. We didn't believe that the Court would entertain an

amended complaint while the motion on the pleadings had been fully briefed.

THE COURT: Well, what makes you think that I'll do it afterwards? Look it, I have taken several bites of this case. I've seen it in what I consider to be inappropriate posture for class settlement. I saw it originally in a motion to dismiss posture, but this is not going to be Shahrazad, so you now think you want to file an amended complaint?

MR. SOLOMON: We would anticipate that the Court would have since the motion was fully briefed, if there was --

THE COURT: No, I asked you, is it your view that you now are not satisfied with the pleading you've submitted?

MR. SOLOMON: Well, in light of the recent decisions that have come down, particularly yesterday, from Judge Saylor, we would request the ability to submit an amended complaint. All of the questions raised by the Court there are very easy for us to remedy, and it's far more efficient for the Court and for --

THE COURT: No, let me tell you, efficiency is when I say you don't get a chance to replead, and I'm about at that point. Now if you're telling me that you want to replead, I'll consider it, but this is it. You've had a great deal of litigation in a number of different fora. These are not new issues to be perfectly candid, they've been out there for some period of time, and I don't really fully understand why I

should permit this.

MR. SOLOMON: Well, your Honor --

THE COURT: What are you going to do? What is it that provided an epiphany in Judge Saylor's decision?

MR. SOLOMON: Well, the complaint was dismissed with prejudice. That was the defining moment. The courts have liberally allowed amendments to pleading. When the case was initially filed, we had numerous cases where on these very similar pleadings, as the defendants point out, had been successful. As the case law has been developing, courts are now raising the standard, it appears, as to what level of detail you need, but the situation that we're in --

THE COURT: What are you going to do? What is this amended complaint going to do?

MR. SOLOMON: It would answer the questions that the courts have raised, it would provide additional detail as to who the defendants are. We believe that we've sufficiently alleged that the defendants are this entity, but we can specifically allege, as we have in the 20 affidavits that were submitted with the notice motion, where these individuals worked, who supervised them and the type of work they did. The evidence in this case is going to be extremely strong on behalf of these clients.

THE COURT: Look it, you have to make it over the pleading hurdle, and now I schedule it for a hearing on your

pleadings, and you view this as kind of an interim undertaking that we'll see how this one turns out and then we'll ask for another pleading. You have to come to rest on your pleadings, and if you're telling me that if you have not come to rest on your pleadings, I want to understand what it is that you have recently learned that you didn't know before.

MR. SOLOMON: That the district courts in Massachusetts are looking for more specificity.

THE COURT: And the Southern District.

MR. SOLOMON: And the Southern District of New York are looking for more specificity as to the defendant that you specifically worked for, which location you worked at of this large entity, specifically perhaps the number of hours over 40 that you worked, what your job title was, details like that.

Those are details that we in the notice pleading that we've done in the past has never been subject to scrutiny and has been accepted.

THE COURT: Of course it has, it's been subject to scrutiny throughout, it was subject to scrutiny by Judge Zobel in Manning, it was subject of scrutiny by Judge Saylor, has been for some time. This is no big surprise, Iqbal has been around for awhile now, and this problem, which is a significant one, has been out there for some time, so I'm a little perplexed about the impact that this has on judicial

efficiency.

It's not as if I hadn't made clear, although I haven't been required to rule on much other than the inadequacy of the arrangement that the defendants and you reached for your own reasons, no doubt, to buy hospital peace, but you're going to have to explain to me why it is after I set the date for the judgment on the pleadings you now say that you want the opportunity to replead.

MR. SOLOMON: The case law is very strong in our favor on the ability to amend a pleading post...

THE COURT: No, it's not, not at this point. Let me tell you something, there are anodynes for painful thought that can be found imbedded in cases about repleading that don't deal with the more specific circumstances of continued recourse to the Court to get some idea of what the case is about and the waiting until the last possible moment in a fashion that is going to interfere with the proper resolution of this case, so it's not going to be enough to tell me about how Rule 15 has forms of liberality with respect to pleading.

MR. SOLOMON: The defendants have not taken a singular position against our complaint. They've filed amended motions for judgment on the pleadings. They have added additional arguments as we've moved along. If this was the first day I filed one complaint and we were doing nothing at that point, I would understand.

THE COURT: You don't think anything here has signaled the concern that you're now attempting to address? The idea that you've sued what could be viewed as a blob consisting of multiple entities, you haven't identified who it is who's the employer except in the most generalized terms. You think that's something new?

MR. SOLOMON: I do. Judge O'Toole in an early decision said it's a very lenient standard, there is a very lenient standard set in Massachusetts. He had one minor change that he wanted us to do. Nearly a year later a separate Judge in the District of Massachusetts raised the bar and said that --

THE COURT: There was no raising the bar, but the point is that you haven't bothered to concern yourself with whether the bar has been raised or whether or not. You've got vulnerabilities, you simply wait until I have to deal with this issue and then tell me that you want to throw sugar in the gas tank?

MR. SOLOMON: That is not it at all. We're not looking for the Court to guide us to tell us what, you know, to give us the feedback of how to plead the case. We have now seen that the courts have taken a stance, and it seems to be in favor of more information than we've provided. It is very simple information for us to provide.

THE COURT: When you say simple, how quickly can you

replead?

MR. SOLOMON: Probably within two weeks.

THE COURT: No, no, two weeks, if it's so simple, I don't understand why it takes two weeks.

MR. SOLOMON: It's only the press of business operations, your Honor. We have many cases going on and court appearances.

THE COURT: In which you're repleading?

MR. SOLOMON: All sorts of manners, your Honor, but two weeks I don't believe would be a prejudicial amount of time to the defendants, and that would provide us sufficient time to set forth the details that the pleadings require, and I think that's a very quick turnaround that we can do that.

THE COURT: Why is it a very quick turnaround when it's been kicking around for awhile? I don't see that at all. I have to tell you that this is not the way that I think litigation should be conducted, and so what you're going to necessitate is the refiling of motions for judgment on the pleadings or to dismiss, right?

MR. SOLOMON: I think the pleadings would -- either the amended complaint either answers the allegations in the pleadings or they --

THE COURT: How are they going to present that to me, by new motion?

MR. SOLOMON: I think the Court could just assess

it.

THE COURT: I don't sit freeform as a kind of roving rit to decide which of the pleadings is okay without some assistance. We do have an adversarial system, although one would wonder about that in light of the settlement agreements that the parties were prepared to proffer to the Court, but this is real litigation, and from my perspective, I want it done with rigor that so far has been lacking by the plaintiff and to some degree by the defendant in the gadarene rush to buy in hospital peace.

So you say two weeks. It's going to require the filing of a new set of motions, I anticipate, and you have 20 named people. Now that's not going to cover all of the defendants, is it?

MR. SOLOMON: Your Honor, there are more than 300 people that have opted into the litigation. There are 20 people from whom we've submitted affidavits for the notice motion. There is not an affidavit that we have from every single location, that is correct.

MS. SCHRETER: Your Honor, might I be heard on this?

THE COURT: Yes.

MS. SCHRETER: At every turn in this case, plaintiffs have vacuously multiplied these proceedings. We sent them a letter detailing each of the grounds on which we intended to move to dismiss. There's nothing new here. There

are no new facts that the plaintiffs obtained. They could have put these facts in from the beginning. They were confronted with these arguments through the mediation process, and they made a deliberate decision. Judge Saylor noted this in his decision not to plead these facts, so we would strenuously oppose any ability on their part now that we have moved for them to kind of waltz back in here and seek to amend their pleadings as an afterthought.

If you look even at their motion for conditional certification, it's classic. In the motion for conditional certification, they've added in a defendant they dismissed. There are people who they have submitted consents from who have no relationship to Partners, and all this time they continue to solicit individuals on behalf of this case for all of these different entities who they didn't even bother to serve and name as named defendants, so we would rigorously oppose any effort on this kind of 11th-hour attempt to amend this, your Honor.

THE COURT: Well, I'm not going to permit the amendment. It's going on this complaint. You've had plenty of time. You've been put on notice of potential deficiencies here including a very detailed letter from the defendants calling to your attention their intention to file judgment on the pleadings, and you ignored it on the benighted assumption that there was going to be some continued opportunity for

resurrection. This is the pleading. I'll evaluate this pleading. If I think it is insufficient, I'll dismiss, enter judgment on it, but there's not going to be a repleading at this stage after all of this.

So we're on for August 3rd. Is there anything else that we need to take up here?

MS. SCHRETER: Not on our behalf, your Honor.

MR. SOLOMON: Not on our behalf, your Honor. Please note my exception to the Court's ruling.

THE COURT: Well, I haven't had a pleading submitted to me, but I'm telling you ahead of time that having had this in front of me, that's what I'm going to do. Now if you want to test it by filing a new pleading, I suppose you can. That's up to you. It's not as if you haven't filed lots of paper, but this is a fairly serious matter to file late like this and not bother to take the time to plead it as fully as the developing case law suggests and to wait until the last moment to hold out the prospect that perhaps you will in two weeks. Not acceptable. We're in recess.

THE CLERK: All rise.

(Whereupon, the hearing was suspended at 2:45 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS )
CITY OF BOSTON )

I, Valerie A. O'Hara, Registered Professional Reporter, do hereby certify that the foregoing transcript was recorded by me stenographically at the time and place aforesaid in Nos. 09-11461-DPW and 09-11725-DPW, Diane Hamilton vs. Partners Healthcare System, Inc., et al. and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

/S/ VALERIE A. O'HARA

______________________________

VALERIE A. O'HARA
REGISTERED PROFESSIONAL REPORTER
DATED JUNE 10, 2011

______________________________