UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DIANE HAMILTON, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Nos. 1:09-cv-11725-DPW |
| vs. | ) | 1:09-cv-11461-DPW |
| | ) | |
| | ) | |
| PARTNERS HEALTHCARE SYSTEM, | ) | |
| INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: THE HONORABLE DOUGLAS P. WOODLOCK

MOTION HEARING

John Joseph Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, MA 02210
Wedneday, August 3, 2011
2:30 p.m.

Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

APPEARANCES:

THOMAS & SOLOMON, LLP
By: Patrick J. Solomon, Esq.
Jessica Witenko, Esq.
693 East Avenue
Rochester, NH 14607
On behalf of the Plaintiffs.

LITTLER MENDELSON PC
By: Lisa A. Schreter, Esq.
Angelo Spinola, Esq.
Bradley E. Strawn, Esq.
David C. Casey, Esq.
3348 Peachtree Road, Suite 1100
Atlanta, GA 30326
On behalf of the Defendants.

ALSO PRESENT:

Joan Stoddard, Esq.
Inhouse Counsel for Partners HealthCare System, Inc.

(The following proceedings were held in open court before the Honorable Douglas P. Woodlock, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, One Courthouse Way, Courtroom 1, Boston, Massachusetts, on Wednesday, August 3, 2011):

LAW CLERK MILLIGAN: All rise.

(The Honorable Court entered the courtroom at 2:30 p.m.)

LAW CLERK MILLIGAN: This Honorable Court is now in session. You may be seated.

This is Civil Action Nos. 09-11461 and 09-11725, Diane Hamilton, et al. versus Partners HealthCare System, Inc., et al.

Will counsel please identify themselves for the record.

MS. SCHRETER: Your Honor, Lisa Schreter on behalf of Partners HealthCare. I'm joined to my right by Mr. Spinola, and to his immediate right, Joan Stoddard, who is in-house labor and employment counsel with Partners.

MR. SOLOMON: Good afternoon, your Honor. Patrick Solomon, Thomas & Solomon. I'm joined by Jessica Witenko of my office as well.

THE COURT: All right. Well, let me just state a ground rule here. We are going to proceed on the Complaints as they now have been filed or had been filed for some time. I am

not permitting any re-pleading here. There has been plenty of opportunity to assess the shortcomings, if any, of the Complaints, and so they rise and fall on their own terms. But there is not going to be any re-pleading in this case. Whether if the motions are granted, the case is going to be re-filed is another matter. But I am going to deal with what is in front of me.

So, let me turn, first, to what I will call the state action; in any event, the action that was initially brought in the Middlesex Superior Court. I want to get to standing, I guess, of the plaintiffs. The only allegation that I see about the plaintiffs is that they are residents of the Commonwealth of Massachusetts; two of them live in Essex and one lives in Norfolk. That is Paragraph 61. Is there anything else?

And, in that connection, how does that differ from, say, me, that I am a resident of the Commonwealth of Massachusetts and a resident of Essex County? In short, if I filed a complaint like this, would it survive? And I assure you that I am not employed by anything like any of the entities that have been sued as defendants here.

MR. SOLOMON: Thank you, your Honor. The Complaint does, in numerous places, discuss the fact that the plaintiffs, as named representatives, are employees.

THE COURT: Where? Where do I look at this to draw that kind of conclusion, and, if so, by what entity, during

what period of time, in what capacity?

MR. SOLOMON: On the face of the Complaint I acknowledge that the Complaint does not indicate which of the defendants the employees worked for.

THE COURT: In a Rule 12 motion we do not look beyond the pretty face, so the face is everything, right?

MR. SOLOMON: I understand that. My point is -- I acknowledge it. We don't say I work for one of these many employers. Our point is that, just as the Department of Labor Regulations allow, we are alleging that together the defendants that are named in this action are the joint employers of the plaintiffs.

THE COURT: Where do I see that in any fashion that could be considered to satisfy even notice pleading, let alone the new regime after Iqbal.

MR. SOLOMON: Paragraph 13 describes the conclusion that these employers are the single, joint or otherwise. Preceding that are the allegations that the named defendants are listed in paragraphs -- it starts with Paragraph 2.

THE COURT: You mean this allegation that the defendants are the employers, single, joint or otherwise, coupled with Paragraph 61 is sufficiently pled to withstand a Rule 12 motion?

MR. SOLOMON: The question is whether --

THE COURT: Well, no. The question is the one I

asked. You may at some point raise some other issue, but the question is the one I asked. Is that it? Is that sufficient?

MR. SOLOMON: Yes, it is.

THE COURT: Has someone said that somewhere? There is a lot of case law. Has some Judge somewhere said something more than the pleading here is "coy"? I am quoting Judge Boudin on that.

MR. SOLOMON: Your Honor, the cases cited in our motion. There have been several decisions where --

THE COURT: Where? Where do they say that Paragraph 13 and Paragraph 61 would be sufficient?

MR. SOLOMON: Well, in this lawsuit no one has ruled on this Complaint. In other lawsuits --

THE COURT: Where? I have the other cases right here. You tell me where I should look for them, look for the language in the opinions of the Judges.

MR. SOLOMON: Your Honor, I would refer you to our brief, which references the --

THE COURT: Your brief, while certainly entitled to whatever deference its persuasiveness provides, is not a ruling of a Court. So, point me to a ruling of a Court that deals with precisely this issue.

MR. SOLOMON: Well, what I was going to say is that in there we discuss Gordon versus Catholic Health -- I'm sorry -- Wolman versus Catholic Health, we discuss Gordon versus

Kaleida, Hinterberger versus Catholic, where these same issues were addressed by the Court, the defendants moving to dismiss those complaints. I don't know if the exact, specific language of that paragraph that you are inquiring about is referenced in those complaints, but that is my belief, that these similar complaints were challenged in these actions.

THE COURT: So, I am looking for the language of a Judge of who takes this up and resolves it on the basis of this kind of allegation.

MR. SOLOMON: I have the cases on my computer. I can open up the computer, if the Court has time for me to do that, and we can go through that.

THE COURT: Well, this is the time for the hearing. Presumably you are prepared. Are we going to watch you put a DVD in the computer?

MR. SOLOMON: No, your Honor. It is just a memory stick where I have the cases on there.

THE COURT: And are you going to be able to get to the cases, say, this afternoon?

MR. SOLOMON: Yes, your Honor.

(Pause)

MR. SOLOMON: As I am looking for this language, your Honor, the question under Twombly is whether the allegations plausibly state a cause of action and whether the defendant is actually on notice of the allegations. So, the question with

respect to am I alleging sufficiently that this employer employed these individuals is, are the defendants on notice that these people worked there?

And the first pleading that you saw in this litigation was the defendants' Notice of Removal, and in that Notice of Removal they said that employee Cunningham was an employee of Shaughnessy Kaplan, and, therefore, the question of did they know that this person was an employee and did they work there, in the very first pleading you saw they were sufficiently on notice to conclude that.

THE COURT: What part of Rule 12 says that Notices of Removal constitute pleadings?

MR. SOLOMON: Your Honor, the part that I am referring to is, is it sufficient to put them on notice? And they were on notice; they acknowledge they were on notice of this employee working at the defendant.

THE COURT: That is absurd as a pleading matter. And in that connection Shaughnessy is a named defendant?

MR. SOLOMON: As I allege in the Complaint, the employer is a joint employer; Partners HealthCare System and the other named defendants are joint employers of this individual. So, that is the allegation that these people were --

THE COURT: It is not sufficient. You know it is not enough. You have to be specific on this.

Is your computer warmed up?

MR. SOLOMON: Yes, your Honor. In the Gordon verses Kaleida Health --

Oh, actually, your Honor, I'm sorry. I gave you the wrong decision.

THE COURT: So, I should not be looking at Gordon?

MR. SOLOMON: Yes. I'm sorry. We are looking at a state complaint here. The federal complaint in Gordon was at issue there. I don't think anyone has addressed the language of this complaint that is before you in this procedural posture.

THE COURT: Well, what about language like that? We have got the same problem with what we will call the federal complaint. In the federal complaint they are said to be employees under FLSA.

MR. SOLOMON: Your Honor, as to the specific language of whether this pleads adequate employer allegations, I believe as to your question I don't think there is a Judge that has specifically addressed that language.

THE COURT: Now, Judge Zobel has, though, hasn't she, effectively?

MR. SOLOMON: I'm sorry. Judge Zobel?

THE COURT: Yes.

MR. SOLOMON: Yes, she has.

THE COURT: She effectively said these are so vague

that they cannot support a cause of action.

MR. SOLOMON: Yes, Judge Zobel has ruled on it, as has Judge Saylor and Judge O'Toole.

THE COURT: Right.

MR. SOLOMON: Judge O'Toole had initially said that this was sufficient and then had later changed that opinion.

THE COURT: And then the Court of Appeals got a chance to look at it and said, We have no idea, none, because the pleading is, as Judge Boudin said, "coy."

MR. SOLOMON: As to whether they are members of a union.

THE COURT: That is just the next step. You say they are employed by someone. Let us assume that I make this leap treating this as dot-to-dot pleading in which I have to draw the lines between the dots. So, I draw a line between the dots and I say, Well, these people are employees of some named entity which is an employer under this capacious Paragraph 13, but are they employees who are subject to a Collective Bargaining Agreement?

MR. SOLOMON: We had no obligation to plead that these people were members of a Collective Bargaining Agreement. That was the defendants' obligation, since they removed it on that basis. The Complaint did not allege, because we have no claims involving a Collective Bargaining Agreement.

THE COURT: Well, don't you think that the question of

whether or not your named plaintiffs, who presumably have engaged you for this undertaking, are members of a collective bargaining unit is meaningful for purposes of Rule 12?

MR. SOLOMON: No. Under my filing of the Complaint in state court --

THE COURT: So, you can continue to be coy here, having been coy before Judge Zobel, Judge Saylor, Judge O'Toole. In the First Circuit there is a certain consistency in the approach to it.

Are they members of the collective bargaining arrangement or not, and by whom are they employed?

MR. SOLOMON: Diane Hamilton may be subject to a Collective Bargaining Agreement.

THE COURT: May be? Have you had a chance to chat with her?

MR. SOLOMON: We have talked to her. She is not sure whether she is in or out of the Collective Bargaining Agreement. She knows that the employer she is at has a Collective Bargaining Agreement. She is not specifically sure whether she individually is a member of the union. Claire Cunningham believes she is a member of the union.

THE COURT: Do these people know by whom they are employed?

MR. SOLOMON: They do. As the defendants are aware --

THE COURT: Look; I am testing this against the

pleadings in the case, not chitchat back and forth between the parties, but the pleadings in the case.

MR. SOLOMON: Yes.

THE COURT: And the pleadings in the case do not tell us any of this. So, now I am telling you or asking you in open court to tell me by whom they are employed and whether or not they are subject to a Collective Bargaining Agreement, and, as I understand it, after two years of litigation you do not know, or your client does not know whether or not she is subject to a Collective Bargaining Agreement after pleading in this case started before this remarkable mediation initiative and called out this problem.

MR. SOLOMON: My client, Diane Hamilton, works at Shaughnessy Kaplan, Lynne Cunningham works as well at Shaughnessy Kaplan, and Claire Kane works at Mass. General. Claire Kane is not in a union, definitively knows that. Lynne Cunningham believes that she is a member of a union. Diane Hamilton is uncertain as to whether she is -- was a member of a union when she worked there last in 2008.

THE COURT: So, the plaintiffs were chosen to illustrate the three, separate approaches one could take to this: yes, no and uncertain?

MR. SOLOMON: It was not purposeful. As to the question of whether the union or the non-union plays a role here, the plaintiffs are not here in Federal Court on this

state complaint because they are alleging anything to do with the union. The defendant, who removed the case to Federal Court, has the burden of proving to the Court through admissible evidence that these individuals were members of a union. That's what they premised --

THE COURT: So, what am I supposed to do? Am I supposed to kick this around for -- this is the fourth time, by the way, you have been here, ostensibly to have me prepare for the question whether or not this case can proceed.

I set it down for a hearing on a Motion to Dismiss at the outset, and I was met with a report that there was available someone skilled in the art of mediating such matters who would undertake to make the rather remarkable settlement that was made here. That was the first time. Then you come back on class certification and nobody can tell me what of these entities are really covered, whether a maintenance person is the same as a nurse. Then you come back a third time and we talk about the releases in which, on behalf of the plaintiffs, you had released their ERISA claims and their RICO claims, all beyond the scope of this.

Now we are here a fourth time, and you are telling me that what I should do is say, Well, the burden of proof rests with someone else and so we will wait until a fifth time to get to something that you apparently know, that at least one of your plaintiffs is subject to a CBA.

It does not work that way anymore. I take it as an admission by the plaintiffs that at least one of the plaintiffs is covered by a CBA.

Now, I turn, then, to Shaughnessy. Not a named defendant in this case. That is right?

MR. SOLOMON: Not specifically by name, but they are named as a joint employer.

THE COURT: So, where do I look at this?

MR. SOLOMON: Paragraph 5 of the Complaint.

THE COURT: All right.

(Pause)

THE COURT: They simply allege that they are facilities.

MR. SOLOMON: Yes, and we are alleging that together in Paragraph 7 --

THE COURT: Now I am going to go Paragraph 7; is that right?

MR. SOLOMON: Correct, your Honor.

That, together, the entities that are discussed in the paragraphs above are joint employers of the employees.

THE COURT: No. They are referred to as "'Partners' or 'defendants.'"

MR. SOLOMON: They are the defendants and then further, I'm sorry, Paragraph 13, defendants now defined to include Shaughnessy, that they are together the joint employer.

THE COURT: And that is it?

MR. SOLOMON: Yes, your Honor, as to the specific name of Shaughnessy in the Complaint.

THE COURT: So, why didn't you allege the employment of the individual?

MR. SOLOMON: At the time we pled we were alleging that as joint employers they specifically worked for this entity, Partners HealthCare.

THE COURT: Why didn't you allege Shaughnessy in the Complaint?

MR. SOLOMON: We believe we did name them in the Complaint.

THE COURT: No. Allege the employment by Shaughnessy specifically. What is being called for is the kind of factual pleading that can weed out claims without a basis at the outset to determine whether or not they are plausible, and you have continued with this kind of coy pleading. Why?

MR. SOLOMON: We didn't believe we were being coy, your Honor.

THE COURT: Well, you must now.

MR. SOLOMON: I don't believe it's being coy today, either. I understand the Court's questioning as to the --

THE COURT: Not only mine but questioning by the Court of Appeals in an opinion by the Court of Appeals, which was, by Judge Boudin's standards, quite harsh.

MR. SOLOMON: I believe as to that question, though, that's a different situation there, the question of whether these people are in a union or not, and the answer in that case is neither of them were in a union. Our position across the board --

THE COURT: Excuse me. Why was it, then, that the Court of Appeals had to send it back to Judge O'Toole?

MR. SOLOMON: Our legal theory in the case is that, regardless of whether they are in a union or not is not dispositive. Our focus in the District Court on that issue was, as it is today, that in order for the Court to find that there is complete preemption, the claims in the Complaint need to either be a claim that there was a breach of the Collective Bargaining Agreement, a specific claim in the Complaint that there was a breach of the Collective Bargaining Agreement, or that a duty that arises under the Collective Bargaining Agreement is what specifically gives rise to the cause of action.

Therefore, the Court doesn't even have jurisdiction, because in our papers, and our belief today is we are not in any of these claims saying that there was a breach of the Collective Bargaining Agreement or that duties that arose from that Collective Bargaining Agreement, such as a duty to pay or not pay for flight time, as in the Adames case, are relevant here. So, in our appeal it wasn't anything to be coy. The

legal theory was it just doesn't matter. The Court then said of the threshold issue the defendants have never proven it and the plaintiffs haven't proven it and described our position as "coy" and took no similar position against the defendants, who just as easily could have specifically said these people are not in a union.

THE COURT: You proceed on the assumption that I am satisfied with the litigation postures that have been assumed by both parties here. Let me disabuse you of that. In fact, I am not sure how you could ever have reached that conclusion when I went through a rather forceful discussion of the choice to cling to outrageous release conditions on the part of the defendants, which provides some explanation for why I suppose the defendants were prepared to pay a lot of money to make these cases go away.

MR. SOLOMON: And I'm sorry, your Honor. I was referring to the First Circuit Court of Appeals, not your Honor.

THE COURT: I understand, I understand. But what I don't understand is why the time of the Courts has been taken by inadequate pleadings and there is this death grip on the pleadings themselves an unwillingness to be candid and forthcoming. I have to ask the question about five times before I get an admission that at least one of these people concedes that she was subject to a collective bargaining

arrangement, and the other one does not know, which is remarkable as well.

And, of course, I look at Ms. Kane's submissions, she says she was an hourly employee subject to the automatic meal break. That is, at least, her affirmation. Now I am told that in Mr. Hickey's affidavit, submitted I guess today in a pleading 14 days after the First Circuit handed down its opinion, styled a "Reply" and filed shortly before the hearing -- fortunately, I did not have a matter on this morning, so I could read this. I do not quite understand why it took so long to put it together except to fit with the litigation posture of the parties to show up with something new to tell the Court on the day of the proceedings. But Mr. Hickey says she is a salaried, paid professional, exempt, not subject to any meal deductions.

Now, have you discussed that with her?

MR. SOLOMON: Our client explicitly believes that she is an hourly employee, that that is inconsistent, his opinion that she is an exempt, salaried employee. So, we still believe that, in accepting the pleadings as true, she is not exempt.

THE COURT: No, you do not get to accept the pleadings as true. I have to. You have a Rule 11 responsibility.

MR. SOLOMON: And I am comfortable with that, that she believes she is not an exempt employee, that she is paid hourly, and that she does not otherwise meet the --

THE COURT: So, we have to deal with all of this at the pleading stage because there has been no effort to tidy up the pleadings, the pleading stage almost two years after the case is filed. That is it?

MR. SOLOMON: Yes.

THE COURT: Now, let us assume that I disagree with you, that I say that the claims here, with the possible exception of the two explicit statutory claims under Massachusetts wage and hour law, are preempted at least as to someone under the Collective Bargaining Agreement, and I say it has not been alleged. Back the case goes on those two counts. And I say that for the ERISA claims the strained treatment of benefits that you offer is unconvincing, that those claims are covered by ERISA, but ERISA is not pled here. So, I send even as to Ms. Kane, who apparently is certain about certain things, back to the state court too. And with respect to the challenge to the law of the excluded middle, the third plaintiff who considers herself truly uncertain, that covers her as well, doesn't it?

MR. SOLOMON: That she would be remanded to state court as well.

THE COURT: So, assuming that I am inclined to do that in this sense, then you are back in state court on those two claims, right?

MR. SOLOMON: Yes, under that.

THE COURT: Now, the alternative is for me to look at this and say this is so poorly pleaded I cannot do anything with it, except to say I do not know who works for whom, under what circumstances, and that is a pleading problem for federal purposes, I dismiss. All right?

MR. SOLOMON: Yes.

THE COURT: So, why shouldn't I send it back to the state court on those two counts?

MS. SCHRETER: Your Honor, Mr. Spinola is going to address the state.

MR. SPINOLA: Your Honor, with respect to the LMRA preemption, we believe that the LMRA preempts the state statutory claim just as well as it does --

THE COURT: It does that for any state statutory provision, Massachusetts wage and hour provision; is that right?

MR. SPINOLA: 149 and 151, the two that have been alleged.

THE COURT: So, your position is that anybody who is under a CBA can never plead such a case? And of course the next question is, is there a case that says that?

MR. SPINOLA: Well, both Judge Saylor in the UMass case and in the Boston Medical, Judge Zobel, both agreed that the LMRA preempts Statute 151, and I believe Judge Zobel found that 149 was also preempted under the LMRA, and that was, as

you know, your Honor, under the exact-same Complaint that we have before us.

THE COURT: Apparently, the Complaint is available at Walmart and it can be duplicated rather easily.

They are the first two people who have held that for the purposes of the CBA, for employees who are covered by a Collective Bargaining Agreement, that 149 and 151 are preempted, right?

MR. SPINOLA: I believe that's correct.

THE COURT: No one else has done that, right?

MR. SPINOLA: Not that I have seen.

THE COURT: Now, with respect to other wage and hour legislation in other jurisdictions, have other Courts held preempted those state wage and hour provisions?

MR. SPINOLA: Yes.

THE COURT: And do I have an obligation to read the Massachusetts wage and hour provisions narrowly to avoid the choice of the preemption to effectively displace actions by the state legislature?

MR. SPINOLA: I believe that the preemption, from everything that I have seen in the case law, is very broad preemption.

THE COURT: Well, it is broad preemption. The question is how broad I reach something like that.

Let us deal with the wage and hour provisions.

Basically they are timeliness provisions, right? Is there something in the CBA that touches on timeliness?

MR. SPINOLA: I believe the CBAs actually, as Mr. Solomon said, the standard is whether there's a requirement for interpretation of the CBA. That's one standard. There's also a secondary standard that's an either/or standard that requires if the duty to pay over time arises from the CBA, if the duty that the claim relates to arises from the CBA, then the LMRA will preempt, and in this case that's exactly -- there is no duty to pay these individuals overtime other than but for the CBA that applies to them.

THE COURT: Well, if that is the case, then they do not have on the merits a Mass. wage and hour claim. To say that every time there is a CBA you have to read it, and if you have to read it, its preemption seems to me a rather broad view of -- broad? It is an overwhelming view of preemption.

MR. SPINOLA: Well, I don't believe that you actually have to read the CBA. What you need to know is what the CBA contains. And what the cases have held is if the CBA contains the same subject matter as the --

THE COURT: How do I know? What is the CBA here?

MR. SPINOLA: The CBA is attached to our judgment.

THE COURT: And what does it say about mandating overtime?

MR. SPINOLA: The CBA allows for daily overtime. It

sets schedules. It sets overtime after 40 hours of work. It talks about shift differentials.

THE COURT: And that displaces entirely Chapter 151?

MR. SPINOLA: We believe it does, and we believe that you don't actually have to look at the language of the CBA as long as you know the contents of the CBA, and the cases have held, the prior cases have held that by referring -- I know that Mr. Solomon has said that there is no allegation regarding any claim that these individuals were part of a CBA, but Paragraph 109 of the Complaint says that defendants entered into an express contract with plaintiffs that explicitly intended to order and govern the employment relationship between defendants and plaintiffs. If that's not the CBA they were subject to, I don't know what it would be.

The CBA also contains a clause that makes it the sole and exclusive agreement between the two plaintiffs that were subject to the CBA and Shaughnessy Kaplan. So, to the extent they are going to claim that there was some secondary employment agreement that they have not described or attached, that agreement would be invalid based on the clause in the CBA. And Courts have found, including Courts here, in this District --

THE COURT: The "Courts" here meaning Judge Zobel and Judge Saylor?

MR. SPINOLA: Yes. Have found that that clause

standing in and of itself, plaintiffs are clearly in their Complaint disputing that the CBA would apply to these individuals. The only way that you are going to be able to determine whether that's true or not is to interpret the CBA, and that gets you where you need to be for preemption purposes. If that's the discussion we are having --

THE COURT: It is. So, let me look at the specific language from Judge Saylor's decision that you want me to have in mind here. I have both of the decisions here, if you want to point me to the page numbers.

(Pause)

MR. SPINOLA: Your Honor, are you looking at the hearing transcript or the opinion?

THE COURT: Opinion.

MR. SPINOLA: Your Honor, I could read it into the record, if you would like.

THE COURT: No. Just point me to the page number.

MR. SPINOLA: December 20th, 2010 order. We have got it as Page 7.

THE COURT: In Westlaw or Lexis?

MR. SPINOLA: Good question. I am not able to tell. It is basically Paragraph B, Counts 6, 7, 10, 12 and 13, the remaining common-law counts.

MS. SCHRETER: Your Honor, if I might clarify, in the opinion it has a heading that begins Paragraph B, Counts 6, 7

and 10, if that will assist you in finding it in the case.

THE COURT: And this is the, you say, 2010 opinion? That is the federal opinion. You mean the 2011, don't you?

MS. SCHRETER: No, your Honor. There were a series of decisions in the UMass case. This is contained in the December 20th, 2010 decision by Judge Saylor.

THE COURT: Then I think you are going to have to pass it up to me.

MS. SCHRETER: May I approach, your Honor?

THE COURT: Yes.

(Document handed to the Court through the Clerk)

(Pause)

MR. SPINOLA: Your Honor, we also have the Manning case, which we think is instructive.

THE COURT: I will get to that in just a second. I want to review this.

(Pause)

MS. SCHRETER: Your Honor, for purposes of your reference, there are two decisions by Judge Saylor. There is a July 2010 decision and December 2010 decision.

THE COURT: On this issue?

MS. SCHRETER: Yes, your Honor.

THE COURT: On the question of the state law case?

MS. SCHRETER: That's correct, your Honor. So, one of the decisions dealt with 149, and then the second decision

dealt with 151.

MR. SPINOLA: And 149, what you are reading now, 149 had already been dismissed under the hospital exemption.

THE COURT: How can I deal with a hospital exemption here on this pleading?

MR. SPINOLA: Pardon me?

THE COURT: On this pleading how can I deal with a hospital exemption? This is the kind of litigation, because of the lack of clarity, that has had both Judge Saylor and Judge O'Toole engaged in agonizing reappraisals of things they have done before and changing their minds.

But how can I on this say that the hospital exemption applies when there are exceptions to the hospital exemption?

MR. SPINOLA: Your Honor, I think it's a very straightforward construction. When you look at what the statute says, it's very clear on the face of the statutes that the hospital exemption would apply both for 149, 151, and the rules allow you to make that judgment as long as you are not attempting to interpret state law. 149 says on its face that this section shall apply to an employee of an incorporated hospital which is conducted as a public charity. There is no dispute that --

THE COURT: Wait a minute. There is no dispute. So, this is the dot-to-dot role that I play in construing this inadequate pleading? Apart from being a citizen of

Massachusetts, where do I know that I am dealing with public charities here in the pleadings?

MR. SPINOLA: From the plaintiffs' pleadings you do not, but we have provided evidence that is also a matter of public record you could take judicial notice of.

THE COURT: I can take judicial notice of public records like that?

MR. SPINOLA: Judge Zobel did.

THE COURT: You are putting me in the position of Dr. Johnson, who was once asked whether he believed in infant baptism. He said, "Believe in it? I have seen it done."

(Laughter)

THE COURT: That does not necessarily mean that I theologically embrace that position.

MR. SPINOLA: Well, I don't know. It's my understanding, and perhaps Mr. Solomon would correct me, but I don't believe that there is any dispute that Shaughnessy Kaplan and Mass. General are public charities.

THE COURT: So, these pleadings proceed by the oral tradition as well as the inadequate pleading; is that it? I asked someone whether or not one of his clients is subject to a collective bargaining arrangement, and then I get something that I suppose I can treat as an admission, kind of, and then I am supposed to have this interactive experience to flesh this out?

The short of it is, they are not alleged to be a charity here, and there is no pleading that I would review for purposes of Rule 12, that I could review for purposes of Rule 12, that says that they are, right?

MR. SPINOLA: I understand your point, your Honor, but the issue that we face -- I mean, if you were to remand that claim there are so many flaws with these pleadings, and we have addressed several of them. There's FLSA preemption on that same claim.

THE COURT: I am sorry?

MR. SPINOLA: FLSA preemption, obstacle preemption on that same claim. There are so many problems that --

THE COURT: By the way, is there case law that says that the FLSA preempts state laws like this?

MR. SPINOLA: Yes, in the First Circuit. The Roman case addressed that very issue.

THE COURT: In the context of Massachusetts wage and hour law?

MR. SPINOLA: It was Maine, it was a Maine overtime law, and the Roman case found that that law, that that Maine statutory overtime law, was preempted by the FLSA.

THE COURT: So, I am supposed to kind cut a wide swath through all of this stuff to reach it on the merits as opposed to simply looking to see whether or not there is a plausible state claim and leave it to a state judge and the development

of pleadings, pleadings and facts, in the state court to resolve that.

There is no question there is a desire to drive a stake in the heart of litigation like this. But as I have tried to make clear all along, there are covenanted roles of proceeding, and that generally means that the Court should look to the rules rather than this kind of disposition.

MR. SPINOLA: I understand your point. My point is that these claims are doomed, they are going to go away, and they have been going away, and that's been true of the federal and the state claims. Moving this to a state court to deal with these same issues is only going to delay the inevitable and lead to more inefficiencies that we have been dealing with now for years.

THE COURT: There is always an allure of bringing on doom more promptly, but that is not the way it works. It works in terms of the rules.

So, I think I understand the point.

Now, let me go to Judge Zobel's Manning decision and if I have the right one. I have the March 10th, 2011. Is that the one I should be looking at?

MR. SPINOLA: The one I am looking at is February -- you may be right. You're right.

THE COURT: It, somewhat conclusorily, says that the plaintiffs are also exempt because of what I will call a

hospital exception. Judge Zobel does take judicial notice of 501(c)(3) tax-exempt organizations. I do not know where one looks to do that, but I suppose it is available somewhere.

MR. SPINOLA: We understand there is an IRS website that would tell you the status of the hospitals, your Honor.

THE COURT: IRS websites are matters of judicial notice in pleadings?

MR. SPINOLA: Well, your Honor, just to clarify, we don't believe that we are asking you to step outside of the rule to dismiss that claim.

I also want to address 151, because 151 is pled in the Complaint on its face --

THE COURT: Right.

MR. SPINOLA: -- that these individuals work for hospitals, and the standard for 151 claims is that 151 provides that it shall not be applicable to any employee who is employed in a hospital. That is what it says. That's what they have said. There's no dispute about whether they work in a hospital. I don't believe there's any dispute.

THE COURT: Where is the allegation that they are employed by a hospital, these three? There is an allegation of joint, single -- I can't remember all the alternative employments. You have to jump from 61 to 13, I think.

MR. SPINOLA: Just a second, your Honor.

(Pause)

MR. SPINOLA: Your Honor, I think you would follow the same trail that Mr. Solomon just gave us. He clearly explained what he intended when --

THE COURT: This is like legislative history to a complaint. I asked him what he intended by the words he used?

MR. SPINOLA: Okay. Your Honor, Paragraph 3, "Partners is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium."

THE COURT: So, is someone engaged in the care of the sick and a healthcare consortium covered by the hospital exception?

MR. SPINOLA: Well, they are pleading in the alternative. They say "and/or." So, I think that can be read to say a hospital and a healthcare consortium.

THE COURT: So, that is one hospital?

MR. SPINOLA: According to the plaintiffs. They are making the argument in Paragraph 7 together the named plaintiffs and healthcare centers and affiliates are referred to as "Partners."

THE COURT: Right. So, I look at this and I say this is the "or," or at least they have alleged an "or." So, I disregard the operation of the hospital and look at the "or the care of the sick and is a healthcare consortium." That is not necessarily a hospital.

I understand the frustration, but the problem is the pleading poses problems for everybody. So, what you are asking me to do is reach out and interpret a state statute of some venerability in the sense that the elderly are supposed to be venerated and essentially strike it down and say it has been displaced by the FLSA, I get to be the first Massachusetts Judge to say that, or I get to say that the hospital exception applies. That is essentially the argument here, right?

MR. SPINOLA: Those are two of the arguments. There are several. You also have ERISA preemption. There are several.

THE COURT: Oh, yes, but I am really talking about these two claims. At this point I think I am talking about these two claims.

MR. SPINOLA: Well, on their face the claims are not pled appropriately, either. Similar to the FLSA claims, they don't allege the employer, they don't even have the dates of employment to establish that they would have a claim under either of those statutes in the statute of limitations period.

There are no dates that are in the Complaint. The way Judge Zobel put it was the only date that you see in the Complaint anywhere is on the signature block. So, the claims are deficient on their face of the Complaint, and you can certainly rule in that regard.

THE COURT: Well, that just wipes the slate clean,

which is to say, we do not even know if we have got an employer, someone who is employed by an employer here, because of the vagueness of the leap that someone has to make from 61 to 13. 61 says that these people are residents of Massachusetts, and 13 says they are -- well, that they have an employer, which I suppose makes them employees. It is not my idea of clarity in pleadings, but there you are.

MR. SPINOLA: Well, your Honor, it seems to be the plaintiffs have pled this way for a reason. They have had plenty of opportunity to establish on that board both in the federal and state realm to address their claims and correct their claims. We have asked them to correct their --

THE COURT: "That board" that you referred to, just so the record is clear, is a timeline of activities in this case?

MR. SPINOLA: That's correct.

THE COURT: And below are references to some pick hits of major cases that bear upon the discussion here?

MR. SPINOLA: That is correct, your Honor. The pleadings are not sufficient, and the issue with not addressing the hospital exemption, the FLSA preemption, the ERISA preemption, all of the various deficiencies with these claims is they just get to continue on and carry these claims on their backs in another forum to waste more time, the time of our client, the time of the judicial system, and, frankly, our time as well.

We believe that you are well within your rights to rule in this way, just as the other Judges have. I understand your reservation, I understand your hesitations, but I believe that the Roman case is very clear, and that is a First Circuit case on this Maine statute, that the LMRA would, in fact, preempt -- excuse me -- the FLSA would preempt the state claim, the statutory claim.

THE COURT: Let me see if I have Roman here.

(Pause)

THE COURT: Is Roman really a preemption case or is it a claim-splitting case?

MR. SPINOLA: I'm sorry, your Honor. I didn't hear you.

THE COURT: Is it really a preemption case or a claim-splitting case?

MR. SPINOLA: It's a preemption case. It's Roman versus Maietta Construction.

THE COURT: Right. I have it.

MR. SPINOLA: Okay. There the Court held that the plaintiff is not entitled under state law to damages in excess of what is provided by the FLSA, because, quote, The FLSA is the exclusive remedy for enforcement of the rights created under the FLSA, and plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim.

The DeSilva case found the same thing out of the Eastern District of New York, and that was an identical complaint, and that was March 16, 2011.

THE COURT: All right. Well, I am going to have to look at this more carefully.

But let us take Ms. Manning, I guess, who apparently is not and understands that she is not a member of a Collective Bargaining Unit. The ERISA preemption takes care of her benefit-type claims, but doesn't she remain alive in terms of other claims, or are you just going to say FLSA displaces all wage and hour regulation?

MR. SPINOLA: Our position on the FLSA is, and I think there is great authority for the proposition in our jurisdiction and in others that the FLSA preempts any claim to overtime, any claim to overtime since the FLSA is the exclusive remedy for overtime.

THE COURT: What about timing of payment?

MR. SPINOLA: Well, the timing of payment -- you are referring to 149?

THE COURT: Yes.

MR. SPINOLA: Section 149 there is no real independent right there, so if they had failed to establish under any other claim that they have a viable claim, there is no 149 violation. All 149 says is you have got to pay plaintiff by a certain date, and the plaintiffs' allegation is because you didn't pay

them all that they were owed, then you didn't pay them on the correct date. That's the allegation. So, if you don't have other claims, that's just a derivative of your main claim, which is really their FLSA claim.

THE COURT: Well, why doesn't this stand alone, or stand, I should say, together with FLSA? There is an FLSA claim in respect of overtime. They haven't paid overtime. But that is an FLSA claim that preempts the field. But isn't there a separate office for and paying it on a timely basis?

MR. SPINOLA: No, your Honor, and it's really obstacle preemption that we are looking at under the FLSA, unlike field preemption under the LMRA. And the way that the FLSA preemption works is, the FLSA is designed to be the exclusive remedy for anything that the FLSA covers.

The only exception to that is in the savings clause, which is what the plaintiffs have pointed to, and the savings clause addresses increasing the minimum wage, which is not an issue here, and the maximum number of hours worked, which is not an issue here. So, other than those two things, our position would be that anything covered by the FLSA would preempt any state-equivalent claim, including 149.

THE COURT: All right. I understand the argument.

One final point. Are Manning and/or Cavallaro on appeal?

MR. SOLOMON: Is Manning on appeal? Yes, your Honor.

THE COURT: And Cavallaro also?

MR. SOLOMON: Oh, I'm sorry. I misheard you. I thought you were talking about UMass. That is still pending before Judge Zobel on the Amended Complaint.

THE COURT: So, the Amended Complaint is still out there?

MR. SOLOMON: Right. There is a hearing next Wednesday on the Complaint.

THE COURT: All right. So, let us turn to the federal statute here. Again, I have instruction with respect to this from Judge Zobel and Judge Saylor.

I guess my question for the plaintiff is why I should depart from it. Why should I depart from what they have done on this? It seems altogether appropriate for me to say that, at least with respect to RICO and ERISA, there are not those kinds of claims made here.

MR. SOLOMON: With respect to RICO and ERISA, your Honor, we'd just stand on our papers. We believe that the decisions of the other District Courts and Judges you have referenced are incorrect. Those issues are not up on appeal yet; they are not ripe for appeal. Even though they have been dismissed, the cases still remain.

THE COURT: So, you want to stand on your papers?

MR. SOLOMON: That's correct, your Honor.

THE COURT: Anything else you want to say?

MS. SCHRETER: Your Honor, if I might, let me reference this chart for a couple of reasons.

May I approach? I have a copy for you as well.

THE COURT: Yes.

(Document handed to the Court through the Clerk)

MS. SCHRETER: Your Honor, what we tried to do with this chart is to illustrate to you -- and at the bottom of the chart and on the one that you have in front of you there is some color coding, and let me explain that.

The red are decisions by different Courts, and we begin with Twombly and Iqbal. You heard from Mr. Solomon's comments earlier today that he is ignoring Iqbal, and he would not have the Court pay any attention to it, with good reason, because Iqbal makes clear that his pleadings here are deficient.

The blue at the top of this chart reflects the activities in this case.

I would like to answer one of your earlier questions about why the plaintiffs have pled this the way they have in both cases. It's no accident, as Judge Saylor realized, and it's certainly, your Honor -- it's not because leaving these facts out would somehow compromise their clients' claims. The facts about who they worked for, when they worked, what hours they worked would benefit their clients' claims.

The reason these facts are left out is quite clear.

They were left out to allow the plaintiffs to continue to string along and rope in all of this conglomeration of individuals and to try and bring them forward to maximize the size of their class and the number of defendants in the case.

That's a simple answer to the question, because, your Honor, if you ask the question of why is it that they haven't pled these facts, there can't be any other answer here, and it was quite deliberate.

For the plaintiffs to suggest to you, as they did in the last hearing, that this was news to them is completely belied by this chart. Beginning in 2007 we have the Supreme Court coming out with the decision in Twombly, in 2009 we have the Iqbal decision. These complaints are filed in September of 2009.

We have captured some of the cases here, your Honor, but by no means all of them. There have been 11 different Federal District Court Judges that have examined this Complaint or component parts of it and have found it wanting.

So, we don't believe, your Honor, that we are asking you to stretch here to dismiss all these claims. Plaintiffs are obligated to plead standing, and they have failed to do it, and on that grounds alone, your Honor, we believe the case should be dismissed.

THE COURT: Anything else?

(No response)

THE COURT: Well, I am going to take it under advisement. I think it is fair to say that, at the very best, these two Complaints are on life support, but I have not pronounced definitively with respect to them.

Nevertheless, until I have, there is not going to be any more action in this case.

I end where I began, which is, this is the Complaint. The plaintiffs not having sought to amend over this period of time with or offered me some alternative complaint that I will rule on it. What the consequences are of dismissal or remand is something that will have to be addressed at a later point by the parties.

So, we will be in recess. I will try to get this out as promptly as I can.

LAW CLERK MILLIGAN: All rise.

(The Honorable Court exited the courtroom at 3:40 p.m.)

(WHEREUPON, the proceedings adjourned at 3:40 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of Hamilton, et al. V. Partners Healthcare System, Inc., et al., Nos. 1:09-cv-11725-DPW and 109-cv-11461-DPW.

Date: August 9, 2011 */s/ Brenda K. Hancock*

Brenda K. Hancock, RMR, CRR

Official Court Reporter