UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


DIANE HAMILTON, LYNNE P. )
CUNNINGHAM and CLAIRE KANE, )
on behalf of themselves and )
and all other similarly )
situated, )
)
              Plaintiffs, )
)   Civil Action NO.
v. )   09-11725-DPW
)
PARTNERS HEALTHCARE SYSTEM, )
INC., PARTNERS COMMUNITY )
HEALTHCARE, INC., THE BRIGHAM )
AND WOMEN'S HOSPITAL, INC., )
BRIGHAM AND WOMEN'S/FAULKNER )
HOSPITALS, INC., MARTHA'S )
VINEYARD HOSPITAL, INC., THE )
MASSACHUSETTS GENERAL )
HOSPITAL, MCLEAN HEALTHCARE, )
INC., THE MCLEAN HOSPITAL )
CORPORATION, NANTUCKET )
COTTAGE HOSPITAL, NEWTON- )
WELLESLEY HOSPITAL, NEWTON- )
WELLESLEY HEALTHCARE SYSTEM, )
INC., NORTH SHORE CHILDREN'S )
HOSPITAL, INC., NORTH SHORE )
MEDICAL CENTER, INC., NSMC )
HEALTHCARE, INC., THE SALEM )
HOSPITAL, UNION HOSPITAL )
AUXILIARY OF LYNN, INC., and )
FAULKNER HOSPITAL, INC., )
)
              Defendants. )


MEMORANDUM AND ORDER
July 21, 2016


    Plaintiffs Diane Hamilton, Lynne P. Cunningham and Claire

Kane (collectively, "Plaintiffs") brought this case as a state

wage and hour action in the Middlesex Superior Court on behalf

of themselves and all other similarly situated employees of a number of entities said to comprise the Partners Healthcare System.  It was removed to this court on federal preemption grounds.  It has been considered jointly with an earlier filed federal claim action (Civil Action No. 09-11461-DPW), brought by the same plaintiffs against the same defendants, raising wage and hour claims under various federal statutes.

In this nominally state law case, plaintiffs allege[1] that their employers maintained policies which violate Mass. Gen. Laws ch. 149, § 148 (Count I), requiring prompt payment of wages, and Mass. Gen. Laws ch. 151 § 1A (Count II), requiring the payment of overtime wages for time worked in excess of forty hours per workweek.  Plaintiffs further contend that the employers' activities constitute breach of express or implied contracts and form the basis for claims of money had and received in assumpsit, quantum meruit/unjust enrichment, fraud,

---

[1] The original complaint in this action remains operative. Although the parties jointly stipulated, in anticipation of a class action settlement, to the filing of an amended complaint on September 3, 2010 [Dkt. No. 89], I did not approve the class action settlements proposed by the parties. Consequently, no Order was entered as to the amended complaint.  Both the defendants and the plaintiffs withdrew their assent to the filing of the amended complaint [Dkt. Nos. 129 (Defendants) & 137 (Plaintiffs)] following rejection of the settlement.  The Defendants had previously answered the original complaint; consequently, the pleadings are closed for purposes of the Fed. R. Civ. P 12(c) motion now before me.

negligent misrepresentation, conversion, and failure to keep
accurate records. *Id.* Counts III-IX, XII-XIII. Two counts
alleging equitable estoppel and promissory estoppel, *id.* Counts
X-XI, were dismissed by stipulation of the parties [Dkt. No.
84]. Defendants moved [Dkt. No. 117] for judgment on the
pleadings on all remaining counts. By endorsement, I have
granted [Dkt. No. 165] the motion in part and denied the motion
in part. This Memorandum and Order provides the parties with
the extended explanation I promised them for that disposition of
the motion.

## I. BACKGROUND

The named defendants in this action are the following
entities: Partners HealthCare System, Inc., Partners Community
Healthcare, Inc., The Brigham and Women's Hospital, Inc., Brigham
and Women's/Faulkner Hospitals, Inc., Martha's Vineyard Hospital,
Inc., The Massachusetts General Hospital, McLean Healthcare,
Inc., The McLean Hospital Corporation, Nantucket Cottage
Hospital, Newton-Wellesley Hospital, Newton-Wellesley Health
Care System, Inc., North Shore Children's Hospital, Inc., North
Shore Medical Center, Inc., NSMC Healthcare, Inc., The Salem
Hospital, Union Hospital Auxiliary of Lynn, Inc., and Faulkner

Hospital, Inc.[2]  Compl. ¶ 2.  In addition to the named
defendants, the complaint lists 27 healthcare facilities and
centers said to be operated by named defendants and over 100
"affiliated" healthcare facilities and centers.  *Id.* ¶¶ 5-6.
Plaintiffs refer to the named defendants, their facilities and
centers, and the affiliates as "Partners" or "Defendants."  *Id.*
¶ 7.

With respect to the Plaintiffs themselves, the complaint
merely states that they "are residents of the Commonwealth of
Massachusetts.  Diane Hamilton and Lynne P. Cunningham reside in
Essex County and Claire Kane resides in Norfolk County."  *Id.* ¶
61.  One might infer from the complaint that Plaintiffs have
been employees of one of the many Defendants (or perhaps an
affiliate) but the complaint provides no information as to which
Defendant(s) employed which Plaintiff(s), where or over what
time period.

Plaintiffs allege that Defendants maintain pay policies
which deny Plaintiffs their compensation for all hours worked,

---

[2]  The complaint also named as defendants Youville Hospital and
Rehabilitation Center, Inc., James J. Mongan, M.D., and Dennis
D. Colling. Compl. ¶ 2.  Plaintiffs voluntarily dismissed
Youville Hospital and Rehabilitation Center, Inc. by notice
[Dkt. No. 46] on December 18, 2009 and the individual defendants
by stipulation [Dkt. No. 84] on July 9, 2010.

including applicable premium pay.  Compl. ¶ 64.  In particular,
Plaintiffs allege that Defendants (1) automatically deduct
thirty minutes of time per day from each paycheck for meal
breaks, without ensuring that such breaks are taken; (2) suffer
or permit Plaintiffs to work before and/or after each scheduled
shift without compensation; and (3) suffer or permit Plaintiffs
to attend compensable training programs without pay.  *Id.* ¶¶ 72-
102.

The plaintiffs' complaint was met with a motion to dismiss
asserting inadequate pleadings [Dkt. No. 26].  Plaintiffs, for
their part, sought remand [Dkt. No. 40] to the state court.
When the parties reported that they were engaged in mediation, I
denied the motion to dismiss and the motion for remand "without
prejudice to resubmittal if the ongoing protracted mediation
process proves unsuccessful." [Unnumbered docket entry May 6,
2010].

The mediation process ultimately generated two successive
motions for preliminary approval of class and collective action
settlements.  At hearings on each motion, I denied them because
— for a variety of reasons — I could not find the settlements
proposed had any prospect of final approval as fair, adequate or
reasonable.  *See generally* Dkt. No. 96 (Dec. 23, 2010 Tr.
concerning initial motion for preliminary approval); Dkt. No.

110 (Mar. 2, 2011 Tr. concerning amended motion for preliminary approval).  My fundamental concern, as expressed at the hearing, was that the settlement proposals — involving some 63,000 employees in a multiplicity of job classifications at a multitude of institutional settings — raised inadequately addressed structural problems.  *Cf. In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 2016 WL 3563719 at *8 (2d Cir. June 30, 2016).

Although I informed the parties that I would entertain one last effort by them aimed at securing approval to notice a proposed settlement, the defendants instead resumed pleadings motion practice by filing the motions for judgment on the pleadings in both the federal claim and the state claim actions. After those motions were filed, Plaintiffs' Counsel voiced the possibility that they might seek leave to amend, but have never followed through with a proper motion to amend.[3]  After an extended period of time, I explain in this — and the related

---

[3] A request to amend, made in argument, "does not constitute a motion to amend a complaint." *Gray* v. *Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008).  "In the absence of exceptional circumstances, a district court is under no obligation to offer a party leave to amend when such leave has not been requested by motion." *Hochendoner* v. *Genzyme Corp.*, No. 15-1446, 2016 WL 2962148, at *9 (1st Cir. May 23, 2016).  No motion to amend, let alone any exceptional circumstances, has been presented here despite a substantial passage of time before issuance of the final judgment today.

Memorandum and Order I enter under the state claims action today — the reasons why I am entering the final judgments in this and the related case on the basis of the operative complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a motion for judgment on the pleadings to be made "after the pleadings are closed — but early enough not to delay trial."  A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss.  *Remexcel Managerial Consultants, Inc.* v. *Arlequín*, 583 F.3d 45, 49 n.3 (1st Cir. 2009) (citing *Citibank Global Mkts., Inc.* v. *Rodríguez Santana, et al.*, 573 F.3d 17, 23 (1st Cir. 2009); *see also Erlich* v. *Ouellette, Labonte, Roberge & Allen, P.A.*, 637 F.3d 32, 35 n.4 (1st Cir. 2011) (describing the standards for evaluating motions to dismiss and motions for judgment on the pleadings as "essentially the same").

Motions to dismiss are reviewed "accepting as true all well-pleaded facts" in the complaint, "analyzing those facts in the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff."  *U.S. ex. rel. Hutcheson* v. *Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011).

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2).  While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of her 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "An adequate complaint" for purposes of Rule 8(a)(2), must therefore "provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández* v. *Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### III. ANALYSIS

In their motion for judgment on the pleadings, Defendants argue that Plaintiffs engage in improper claim splitting, fail to allege sufficient facts to show standing or allege employer relationships, and fail to plead plausible claims.  They also contend that an exemption for hospitals requires dismissal of

8

the statutory claims, that the FLSA is the exclusive remedy for claims for overtime wages, that all claims are preempted by ERISA and must be dismissed for failure to exhaust remedies, and that the claims of Plaintiffs Cunningham and Hamilton are preempted by § 301 of LMRA, which also requires their dismissal.

Although there is no motion to remand currently before me, at the threshold I examine the two bases for removal — preemption under the LMRA and ERISA — to determine whether those statutes properly confer federal subject matter jurisdiction over this action and whether they require dismissal as the Defendants contend.  *See Pruell* v. *Caritas Christi*, 645 F.3d 81, 84 (1st Cir. 2011) *("Pruell A-1")*[4] (noting, in a similar case, that the potential lack of preemption by LMRA puts subject matter jurisdiction in doubt).

Defendants contend that Plaintiff Hamilton and Plaintiff Cunningham are both subject to collective bargaining agreements

---

[4] The multiplicity of published opinions regarding the hospital compensation matters litigated in this district has caused me to adopt a protocol for citations in the several Memoranda and Orders I am issuing today.  Thus, the First Circuit opinions in the cases are identified by the name of the initial identified plaintiff followed by the letter "A" and in the *Pruell* matter, a number indicating the order of issuance of appellate opinions in that matter.  Published District Court opinions in the matters are numbered in chronological order by the name of the initial identified plaintiff followed by a roman numeral.

("CBAs") with their respective employers.  Despite their "coy" pleading, *cf. Pruell A-1*, 645 F.3d at 83 (noting "coyness of the plaintiffs' counsel" in failing to provide clear indication whether named plaintiff was employee covered by a CBA) and extended fencing over the issue, I find as part of my responsibilities to address jurisdiction at the outset, that both Plaintiff Cunningham and Plaintiff Hamilton are subject to a collective bargaining agreement.  Moreover, I find that plaintiff Kane is not subject to a CBA.

I make this factfinding as part of the jurisdictional inquiry authorized by the First Circuit at the pleading stage. In this connection, it is important to note that when jurisdiction is at issue in pleadings practice, materials beyond the pleadings themselves may be considered.  The First Circuit has described the ways in which factual materials may be considered when confronting jurisdictional challenges:

> The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her

favor, and dispose of the challenge accordingly. See *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam); see also *Barrett v. Lombardi*, 239 F.3d 23, 30-31 (1st Cir. 2001) (assuming truth of uncontested facts set forth in plaintiff's explanatory affidavit). For ease in classification, we shall call this type of challenge a "sufficiency challenge."

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1) — which we shall call a "factual challenge" — permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. See *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. See *Lawrence*, *364 919 F.2d at 1529; *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

The rationale for this praxis is obvious. A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached. See *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

*Valentin* v. *Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001).

Defendants have provided evidence showing Hamilton and Cunningham were union members subject to a CBA and that Plaintiff Kane was not.  Plaintiffs' Counsel has declined to confront this evidence, except by professions of ignorance about the matter.  The issue was framed at the commencement of this action in this Court by removal.  The CBAs attached to the notice of removal, which Defendants state and Plaintiffs do not contest, governed Plaintiff Cunningham's (and Plaintiff Hamilton's) employment at the Shaughnessy-Kaplan Rehabilitation Hospital, provide for broad grievance procedures.  *See generally* Dkt. No. 1, Exhibits C, D and E.  The CBA for the 2005-2007 period states that "The grievance and arbitration procedure provided for herein shall be the exclusive procedure for resolution of disputes concerning the interpretation or application of the Agreement," [Dkt. No. 1-5 § 6.1] as does the 2002-2004 version of that CBA [Dkt. No. 1-6 § 6.1].  *See generally* Plaintiffs' Status Report, Sept. 4, 2011 [Dkt. No. 163]; Defendants' Status Report, Sept. 4, 2012 [Dkt. No. 162]. *See also* Tr. Aug. 3, 2011, at 10-14, esp. at 12 [Dkt. No. 134] (Plaintiffs' Counsel reports he understands Plaintiff "Kane is not in a union, definitely knows that.  Lynne Cunningham believes she is a member of a union. Diane Hamilton is uncertain as to whether she is - - was a member of a union when she worked

there [Shaugnessy Kaplan] last in 2008").[5]  Moreover, Plaintiffs'

Counsel unsuccessfully proposed an arrangement[6] to dismiss claims

in his case necessarily predicated on the assumption that

Plaintiffs Hamilton and Cunningham were covered by a CBA with

their employer Shaughnessy Kaplan Rehabilitation Hospital and

that Plaintiff Kane was not covered by a CBA[7] as an employee of

Massachusetts General Hospital [Dkt. No. 163, Ex. G].

## A.    *LMRA Preemption*

Because Plaintiff Kane is not subject to a collective

---

[5] I note that specific documents beyond the bare complaint and
answer may be considered during pleadings practice without
converting the motion to dismiss or for judgment on the
pleadings into one for summary judgment. *See generally
Watterson* v. *Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) ("[C]ourts
have made narrow exceptions for documents the authenticity of
which is not disputed by the parties; for official public
records; for documents central to the plaintiffs' claim, or for
documents sufficiently referred to in the complaint.")

[6] I note I may consider the proposed settlement arrangement for
the limited purpose of evidence concerning a jurisdictional
fact.  This is because settlement negotiations are only
inadmissible "to prove or disprove the validity or amount of a
disputed claim or to impeach by a prior inconsistent statement
or a contradiction."  Fed. R. Evid. 408.  However, Rule 408 does
not exclude settlement evidence for any other purpose.  *McInnis*
v. *A.M.F., Inc.*, 765 F.2d 240, 248 (1st Cir. 1985) ("Although
Rule 408 bars the admission of evidence of settlement to prove
liability or the validity of a claim, it expressly allows such
evidence offered for other purposes.").

[7] It bears emphasizing that I rely only upon the uncontested
evidence indicating Plaintiff Kane's employment as a non-CBA
employee.  Whether she is an exempt employee goes to the merits
and is not part of my limited jurisdictional factfinding.

bargaining agreement, the discussion in this subsection regarding LMRA preemption applies only to the claims of Plaintiffs Cunningham and Hamilton.

Defendants argue that all claims with respect to Plaintiffs Cunningham and Hamilton are preempted pursuant to § 301 of the LMRA and that they must be dismissed for Plaintiffs' failure to exhaust remedies through the applicable CBAs. Section 301 creates federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185(a).

The Supreme Court has held that § 301 "completely pre-empts" certain state law claims. *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 393 (1987); *see also O'Donnell* v. *Boggs*, 611 F.3d 50, 53-54 (1st Cir. 2010). This is because "the pre-emptive force of such a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 65 (1987)). Unlike the general rule, under which removal may not be based on the federal defense of preemption, in cases where "an area of state law has been completely pre-empted, any claim purportedly based on that pre-

14

empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.  See also Pruell A-1*, 645 F.3d at 82 ("Section 301 says nothing about state claims or removal, but under its aegis the Supreme Court has built an edifice of doctrine that transmutes certain state law claims into Federal claims, permits their removal on the basis of federal question doctrine, and in certain instances then allows their dismissal in federal court.").

Section 301 governs claims "'substantially dependent on analysis of a collective-bargaining agreement,'" as well as those arising directly from rights created by a CBA. *Caterpillar*, 482 U.S. at 394 (quoting *Elec. Workers* v. *Hechler*, 481 U.S. 851, 859 n.3 (1987)).  Thus, "if the resolution of a state-law claim depends on the meaning of a collective bargaining agreement, the application of state law," is preempted by § 301.  *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).  Preemption does not reach, however, "'purely factual questions about an employee's conduct or an employer's conduct and motives'" that "'do not require a court to interpret any term of a collective-bargaining agreement.'" *Flibotte* v. *Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (quoting *Hawaiian Airlines, Inc.* v. *Norris*, 512 U.S. 246, 261 (1994)).

1.   The First Circuit's Preemption Analysis in Hospital
     Compensation Cases

In reviewing a substantially similar complaint in related litigation, the First Circuit found the state case to be removable, because it included claims completely preempted by federal labor law, and the claims generally to require dismissal. *Cavallaro* v. *UMass Mem'l Healthcare, Inc.*, 678 F.3d 1 (1st Cir. 2012) ("*Cavallaro A*").

The First Circuit expressly held in *Cavallaro A* that almost all of the plaintiffs' claims there were intertwined with interpretation of the CBA.  First, claims for money owed, including claims for unjust enrichment or conversion, all required a determination of what was owed under the CBA.  *Id.* at 5.  Second, claims for fraud and negligent misrepresentation turned in part on the plaintiffs' reasonable reliance on defendants' statements.  "But plaintiffs, who say they were misled into thinking certain time was uncompensated, could not have reasonably relied on such statements without taking into account CBA provisions like those guaranteeing payment for work performed during meals, and the practices such provisions embody."  *Id.* at 6.  Third, claims concerning pre-CBA employment contracts or any other prior contract claim are intertwined with the "inevitable defense" that the CBA superseded the prior

16

contracts.  *Id*. at 6-7.  Fourth, plaintiffs' statutory claims, too, required interpretation of the CBA, according to the First Circuit: determination of whether defendants paid plaintiffs the wages owed within a fixed period and accurately kept records of wages depend on what the CBA provided as wages, as well as more specific provisions governing what time is compensable.  *Id.* at 8.  *See also Adames* v. *Executive Airlines, Inc.*, 258 F.3d 7, 13-16 (1st Cir. 2001) (finding state wage law claims for overtime, uncompensated work time, meal periods, and related issues required interpretation of CBA).

The First Circuit left unresolved the preemption of only one state claim, that for overtime under the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151 § 1A.  Because the district court in *Cavallaro* found the claim barred by a statutory exemption for employees who work "in a hospital," the First Circuit did not determine whether the claim was preempted.  *Cavallaro A*, 678 F.3d at 9.

Nothing about Plaintiffs' complaint in this matter – as concerns Plaintiffs Cunningham and Hamilton – differs in any relevant way from the complaint in *Cavallaro*.  Consequently, all claims made by them other than the statutory overtime claim appear preempted under directly applicable precedent.  Nevertheless, I analyze all the specific claims below in the

context of this litigation, addressing with greater
particularity the arguments the parties have pressed.

    2.   Breach of Contract Claims

The parties dispute whether the breach of contract claims
by Cunningham and Hamilton arise out of the CBA or separate,
independent employment contracts.  Defendants argue that the
resolution of the claims by Cunningham and Hamilton for such
claims (Counts III, IV, and V) rely on the CBA for two reasons.
First, the CBA's integration clause must be interpreted to
determine the viability of any other contract between the
individuals and Defendants.  Second, the contract claims
themselves are based on rights created by, and requiring the
interpretation of, the CBA.  *Id.*

Plaintiffs rely on the Supreme Court's holding in
*Caterpillar* that "a plaintiff covered by a collective-bargaining
agreement is permitted to assert legal rights *independent* of
that agreement, including state-law contract rights, so long as
the contract relied upon is *not* a collective bargaining
agreement."  *Caterpillar*, 482 U.S. at 396 (emphasis in
original).  In *Caterpillar,* the Court found that § 301 does not
preempt actions for breach of individual employment contracts.
*Caterpillar*, 482 U.S. at 394-99.  Plaintiff's assert that the
claims at issue here arise out of independent employment

contracts and are therefore not subject to LMRA's complete preemption.

Plaintiffs' reliance on *Caterpillar* fails for two reasons. First, the parties' arguments with respect to the integration clause would require this court to interpret that provision of the CBA.  The plaintiffs in *Caterpillar* based their action on individual employment contracts applicable during a time when no CBA governed their employment, *see Caterpillar*, 482 U.S. at 388-89, although the employment relationship was subsequently revised and made subject to a CBA.  By contrast, here, there is no dispute that Plaintiffs Cunningham and Hamilton were subject to a CBA during their employment and the interaction between the two contractual relationships is in dispute.

The integration clause provides that the CBA "contains the complete agreement of the parties, and no additions, waivers, deletions, changes or amendments shall be effective during the life of this Agreement, unless evidenced in writing, dated and signed by the parties hereto."  Agreement § 16.1.  Defendants argue that the term "parties" encompasses individual employees as well as the collective bargaining unit, while Plaintiffs dispute that interpretation.  Plaintiffs' own discussion of the application of the integration clause nevertheless calls on the court to interpret the CBA.  For this reason, I am satisfied

§ 301 preempts the breach of contract claims because "at the very least," this court "would be required to interpret the CBA to determine whether it was intended to be the sole agreement between the parties." *DiGiantommaso* v. *Globe Newspaper Co., Inc.*, 632 F. Supp. 2d 85, 89 (D. Mass. 2009) (holding that a cause of action for breach of a purported implied contract would require interpretation of a CBA and the totality of the parties' contractual relationship); *see also Cavallaro A*, 678 F.3d at 5-7 (1st Cir. 2012).

The second reason Plaintiffs' contention that the Cunningham and Hamilton breach of contract claims do not rely on the CBA must fail is that they have not alleged any facts to support an alternate contractual relationship.  Plaintiffs ultimately have not disputed that the CBAs apply to Cunningham and Hamilton; and have not undertaken to offer any reason that the CBA provisions regarding wages, overtime payments, and general conditions of employment would not supersede, in the words of their reply brief, any "individual employment contract . . . created by the representations and promises made by defendants individually to plaintiff, in order to induce her employment."

The complaint contains legal conclusions regarding contractual relations, but provides no information as to the content or form of the individual contract said to be at issue.

20

*See, e.g.*, Compl. ¶ 108 ("By entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, including implied contracts and express contracts."). Moreover, the description of the contractual relationship in the complaint contradicts that provided in Plaintiffs' briefing. The complaint refers to one collective express contract between Defendants and Plaintiffs, as well as other employees:

> Defendants entered into an express contract with Plaintiffs and Class Members that was explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members. This binding express contract provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract. This express contract provided that defendants promised to compensate Plaintiffs and Class Members for 'all hours worked' during their employment period.

*Id.* ¶¶ 109-11. By contrast, in their briefing, Plaintiffs state that the claims arise out of an "individual employment contract."

Plaintiffs have failed to allege a plausible contractual arrangement independent of the CBA. The only reasonable inferences which can be drawn from the complaint are either (1) the contract referred to in the complaint is in fact the CBA; (2) Defendants' representations and promises which allegedly created individual employment contracts were "unilateral, gratuitous, unbargained-for message[s], confirmatory of and founded on CBA rights," and cannot be

"considered an independent agreement sufficient to escape Section 301
preemption," *Vargas* v. *Geologistics Ams., Inc.*, 284 F.3d 232, 235
(1st Cir. 2002); or (3) some individual agreement that must be read
in conjunction with the CBAs in order to discern the content of the
entire contractual relationship between the parties.  It is proper to
look "beyond the face of the complaint to determine whether the
contract claim was in fact a section 301 claim for breach of a
collective bargaining agreement 'artfully pleaded' to avoid federal
jurisdiction." *Young* v. *Anthony's Fish Grottos, Inc.*, 830 F.2d 993,
997 (9th Cir. 1987) *accord Magerer* v. *John Sexton & Co.*, 912 F.2d
525, 528 (1st Cir. 1990); *cf. Cavallaro A*, 678 F.3d at 5 ("The
interrelationship of the state claims and a CBA cannot be avoided
merely by refusing to identify the CBA in the complaint and citing
the well pleaded complaint rule.")  I find that this is such a case,
and Plaintiffs cannot avoid federal jurisdiction with respect to
their contract claims.

   3.   Other Common Law Claims

   The complaint also asserts common laws causes of action for
money had and received in assumpsit (Count VI); quantum
meruit/unjust enrichment (Count VII); fraud and negligent
misrepresentation claims (Counts VIII and IX); and conversion
(Count XII).

The common law claims are each based on the theory that
Defendants did not compensate Plaintiffs for time worked to
Plaintiffs' detriment and for the unjust benefit of Defendants.
The claims based on money had and received in assumpsit and
quantum meruit/unjust enrichment allege that "[a]s a direct and
proximate cause of defendants' failure to pay Plaintiffs and
Class Members . . . Plaintiffs and Class Members have suffered
damages."  Compl. ¶¶ 177, 180.  The fraud and negligent
misrepresentation claims are based on assertions that
"defendants deliberately misrepresented to Plaintiffs and Class
Members that they were being properly paid for compensable
time." *Id.* ¶ 147.  Plaintiffs argue that Defendants, through
their conduct and statements, including information contained on
pay stubs, misrepresented that plaintiffs were being paid for
all compensable time, and that Plaintiffs relied on this fraud
and misrepresentation to their detriment.  *Id.* ¶¶ 145-57.
Finally, Count XII, alleging conversion, is based on the theory
that Defendants' failure to compensate them for all
hours worked constitutes conversion of those wages owed.  *Id.* ¶¶
130-31.

Because the common law claims are all based on the premise
that Defendants failed to pay compensation owed to Plaintiffs,
the resolution of these claims requires interpretation of the

CBA to determine whether wages were in fact owed and for purposes of computing any unpaid wages due as a remedy.  *See supra* Section III.A.2 (discussing the need to interpret the CBA in order to determine whether wages are owed).  For those reasons, I conclude that § 301 of LMRA preempts these claims. *See Cavallaro A*, 678 F.3d at 6 (finding same).

### 4.   Violation of Massachusetts Weekly Wage Act

In Count I, Plaintiffs allege that Defendants violated the Massachusetts Weekly Wage Act, MASS. GEN. LAWS ch. 149, § 148.[8] Section 148 requires that "[e]very person having employees in his service shall pay . . . each such employee the wages earned by him" within certain time periods.  The purpose of this provision "is to prevent the 'unreasonable detention of wages [by employers].'"  *Prescott* v. *Higgins*, 538 F.3d 32, 42 (1st Cir. 2008) (quoting *Boston Police Patrolmen's Assoc., Inc.* v. *City of Boston*, 761 N.E.2d 479, 481 (Mass. 2002)) (alteration in the original).  To make out a claim under § 148, Plaintiffs must show that they were employees under the statute and that "defendants violated the Act by not paying . . . wages in a

---

[8] The opportunity for private actions by employees to seek injunctive relief or damages in connection with violations of MASS. GEN. LAWS ch. 149 § 148 is provided by MASS. GEN. LAWS ch. 149 § 150.

timely manner." *Stanton* v. *Lighthouse Fin. Servs., Inc.*, 621 F.Supp.2d 5, 10 (D. Mass. 2009).

The First Circuit explained in *Adames* v. *Exec. Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001), that claims for wages are preempted by § 301 where a CBA's provisions outlining the calculation of wages must be interpreted and applied to an individual's circumstances.  258 F.3d at 13-14.  It is not disputed that the CBAs at issue here contain such provisions. *See, e.g.*, Agreement § 7.3 & Art. VIII (addressing overtime payments, salary scales schedules (which depend on an employee's grade and tenure), and shift differential or premium pay for time worked during evenings, nights, weekends and holidays).

Plaintiffs rely on *Livadas* v. *Bradshaw*, 512 U.S. 107 (1994), in which the Supreme Court rejected the California State Labor Commissioner's argument that § 301 preempts state law in a dispute between an employee and an employer regarding the timely payment of wages in accordance with a state statute.  *Livadas* is distinguishable from the instant case because it did not involve the calculation of wages, but rather a determination whether the *timing* of payment complied with the California state law.  *Id.* at 124-25.  It required analysis of a calendar, not the CBA. *Id*.  Consequently, *Livadas* did not involve the resolution of "'questions relating to what the parties to a labor agreement

agreed, and what legal consequences were intended to flow from breaches of that agreement'" which, if addressed in state courts, would frustrate the purpose of § 301 in developing uniform federal collective bargaining laws. *Id.* at 123 (quoting *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985)). Here, because plaintiff's claims "assert a failure to pay wages," they "require both interpretation of the CBA provisions categorizing hours and the associated wage and a determination of how those CBA terms integrate with other statements by the defendants." *Manning* v. *Boston Med. Ctr. Corp.*, No. 09-11724, 2011 WL 864798, at *2 (D. Mass. Mar. 10, 2011) )("*Manning II*"). Indeed, the First Circuit has identified specific CBA provisions which require interpretation in resolving similar Weekly Wage Act claims. *Cavallaro A*, 678 F.3d at 8. For these reasons, the claim for unpaid wages in violation of MASS. GEN. LAWS 149, § 148 is preempted by § 301 of LMRA.

### 5.  Remaining Statutory Claims

The complaint also includes statutory causes of action for failure to keep accurate records under MASS. GEN. LAWS ch. 151 § 15 (Count XIII); and failure to pay overtime wages in violation of MASS. GEN. LAWS ch. 151 § 1A (Count II).[9]

---

[9] I note that Judge Saylor in *Cavallaro* chose to resolve this Massachusetts statutory claim by invoking the state law hospital

These remaining statutory claims also are preempted. Plaintiffs' claim that defendants failed to keep accurate records is derivative of a claim that defendants failed to properly compensate plaintiffs properly.  Determining whether the records were kept accurately would require interpreting the CBA to determine what accurate records should have stated.  As the First Circuit stated, "[a]ccurate records also depend on what the CBA provided as wages." *Cavallaro A*, 678 F.3d at 8.

The statutory overtime claim would also require interpretation of the CBA.  Section 1A of Chapter 151 requires that an employee working more than forty hours a week "receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed." MASS. GEN. LAWS ch. 151 § 1A.  While the application of this statute might be mechanical and require no more than passing reference to the CBA, *see, e.g., DiGiantommaso* v. *Globe Newspaper Co.*, 632 F. Supp. 2d 85, 90 (D. Mass. 2009), it may also involve application of "[t]he peculiarities of industry-specific wage and benefit structures" and therefore require interpretation of the CBA.  *Adames*, 258 F.3d at 13.  The

---

exception and the First Circuit affirmed, *Cavallaro A*, 678 F.3d at 9.  I choose not to resolve this issue on that basis, but leave the scope of the hospital exception to the state court on remand.

First Circuit has found the health care industry, and pay structures similar to those in the CBAs involved in this case, to involve such peculiarities and be a "complicated task better-suited for an arbitrator's expertise." *Cavallaro A*, 678 F.3d 8. Determining how to apply shift differentials, weekend premium pay, or on-call pay, for example, in the context of the complicated scheduling practices inherent to the hospital context, requires more than a calendar and a calculator. Put differently, determining whether and what overtime is due requires, at a minimum, determining the "regular rate" of pay, an issue I have already described as requiring CBA interpretation.

* * * * * * * * * * * *

In conclusion, all the state law claims in this case made on behalf of plaintiffs Hamilton and Cunningham are preempted by the LMRA.

### B.    *LMRA Dismissal*

Preemption under § 301 not only provides federal courts with jurisdiction over these claims, but also requires, in this case, their dismissal. *See Cavallaro A*, 678 F.3d at 3 ("When one turns from removal of the case to disposition of the claims, a different set of issues arise. Here, it is not the CBA alone but the presence, at least in this case (as in many others), of

28

a broadly-phrased grievance and arbitration provision in the
CBA."). "[F]ederal labor policy requires that individual
employees wishing to assert contract grievances must attempt use
of the contract grievance procedure agreed upon by employer and
union as the mode of redress." *Republic Steel Corp*. v. *Maddox*,
379 U.S. 650, 652 (1965). Thus, where a CBA includes a
grievance and arbitration provision, "courts ordinarily dismiss
claims falling within such provisions—namely, those intertwined
with interpretation and application of the CBA—so long as relief
can be provided within the CBA process." *Cavallaro*, 678 F.3d at
6.

There is no indication or allegation that Plaintiffs
Hamilton or Cunningham pursued this grievance procedure.
Consequently, dismissal of all claims by Hamilton and Cunningham
is required.

## C.   *ERISA Preemption*

Because I find Plaintiff Kane is not subject to a CBA,
there must be a separate basis for federal subject matter
jurisdiction in order to prevent remand of her case to the state
court. *See generally Pruell A-1*, 645 F.3d 81. Defendants argue
that ERISA preempts all counts and requires dismissal of
Plaintiff Kane's claims (as well as those of her co-

29

plaintiffs)[10], citing the references made in the complaint to

"benefits" and especially her prayer for relief, which seeks "an

award of the value of Plaintiffs' and Class Members' unpaid

wages, including fringe benefits." (Compl. ¶ 160).

### 1.   ERISA and State Claims

ERISA contains an exclusive civil enforcement provision at

§ 502(a), 29 U.S.C. § 1132(a), which provides a private cause of

action for participants or beneficiaries of ERISA plans.  Among

other things, § 502(a) entitles beneficiaries to bring actions to

"recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify

his rights to future benefits."  In *Metro. Life Ins. Co.* v.

*Taylor*, 481 U.S. 58 (1987), the Supreme Court held that state

actions that fall within the scope of § 502(a) are completely

preempted by that provision and are removable to federal court.

Section 502(a)'s "integrated enforcement mechanism . . . is a

distinctive feature of ERISA, and essential to accomplish

Congress' purpose of creating a comprehensive statute for the

regulation of employee benefit plans."  *Aetna Health Inc.* v.

---

[10] While I have entirely dismissed the claims of Plaintiffs
Hamilton and Cunningham on grounds of LMRA preemption because
they are subject to a CBA, the treatment of ERISA preemption in
this subsection would alternatively support partial preemption
of their claims to the same degree as it does with respect to
the claims of Plaintiff Kane.

*Davila*, 542 U.S. 200, 208 (2004).  As a result, in a manner similar to § 301 of the LMRA, § 502(a) of ERISA can convert state law complaints into federal claims that are completely preempted and removable to federal court.  *Id.* at 209.

To establish complete preemption under ERISA, "defendants must show that the state cause of action falls within the scope of ERISA § 502(a)."  *Danca* v. *Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir. 1999).  This can occur when the state law forming the basis for the cause of action is "properly characterized as an 'alternative enforcement mechanism' of ERISA § 502(a) or of the terms of an ERISA plan."  *Id.*  Thus, for example, if a plaintiff claims that she is entitled to benefits which she has been denied, such a claim is preempted by § 502(a).  *Davila*, 542 U.S. at 210 (finding a complaint for denial of medical care, where coverage is available as a result of an ERISA-regulated benefit plan, preempted under § 502(a)).

To support their argument for preemption, Defendants rely principally on Plaintiffs' prayer for relief which states that they seek "an award of value of Plaintiffs' and Class Members' unpaid wages, including fringe benefits." (Compl. ¶ 160).  This appears, on its face, to request enforcement of an ERISA plan and provision of the benefits allegedly owed and improperly denied.  Plaintiffs counter that they do not actually seek ERISA

31

"benefits," and observe that there are no "factual allegations referencing employee benefit plans in plaintiffs' state complaint because those allegations do not exist."  Plaintiffs argue instead that they seek the *value of* "fringe benefits," or equitable relief regarding the crediting of time for purposes of benefits calculations.

Plaintiffs attempt to draw a fine distinction between seeking "to recover benefits due . . . under the terms of [the] plan," 29 U.S.C. § 1132(a), which would clearly be preempted by ERISA, *see, e.g.*, *Negrón-Fuentes* v. *UPS Supply Chain Solutions*, 532 F.3d 1, 7 (1st Cir. 2008), and seeking the *value* of benefits (or the crediting of hours for the purpose of benefits calculation), which they argue is not preempted.  I reject that distinction because it relies purely on a matter of semantics. Plaintiffs offer no explanation for how a dispute over the value of the benefits, or the crediting of time, is distinct from a dispute over the benefits in the ERISA-regulated plan itself, and I find that there is no discernible difference.  *See Davila*, 542 U.S. at 214 ("particular label affixed" irrelevant to ERISA preemption).  Fundamentally, this prayer for relief seeks compensation for benefits not provided, and ERISA provides the sole remedial mechanisms through which wrongful denials of benefits can be addressed.

Moreover, there is no limitation in ERISA preemption to suits seeking that pension benefits be provided directly.  For example, a wrongful discharge suit in which the employee did not seek pension benefits but only lost wages and punitive damages has been held preempted because the discharge was "premised on" the existence of an ERISA plan.  *D.C.* v. *Greater Washington Bd. of Trade*, 506 U.S. 125, 131 (1992) (discussing *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 139, (1990)).  ERISA preemption does not turn on whether the remedy sought is precisely the benefits denied or some other form of related compensation; seeking the value of the benefits is not meaningfully different in this sense from seeking to recover the benefits themselves. In any event, Plaintiff's action also aims to "clarify . . . rights to future benefits," a cause of action that is squarely captured by § 502(a).

To the extent that Plaintiffs' action concerns the allocation of funds to a plan, this issue is intertwined with "ERISA's purpose of protecting the interests of pension plan members."  *State St. Bank & Trust Co.* v. *Denman Tire Corp.*, 240 F.3d 83, 90 (1st Cir. 2001).  In *Denman Tire*, the First Circuit joined other circuits which allow federal causes of action for restitution to pension funds when monies had been misallocated. It found that "'[t]o permit restitution'" in such cases "'would

only further the goals of ERISA, that is to safeguard the corpus

of funds set aside under the [Plan] for [] valid Fund

beneficiaries.'"  *Id.* (quoting *Luby* v. *Teamsters Health,*

*Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1186 (3d Cir.

1991) (alteration in the original).  Here Plaintiffs assert that

monies owed to their benefit funds have not been so allocated.

Consequently, Plaintiffs can hardly dispute that their action,

with respect to benefits, is not aimed to "enforce [] rights

under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. §

1132(a)(1)(B).  The complaint is completely preempted by ERISA,

providing federal court jurisdiction.[11]

As a general matter, claims for ERISA benefits must be

dismissed if Plaintiffs fail to exhaust administrative remedies.

*Tetreault* v. *Reliance Standard Life Ins. Co.*, 769 F.3d 49, 51-2

(1st. Cir. 2014).  ERISA provides at 29 U.S.C. § 1133 that

benefit plans shall "afford a reasonable opportunity to any

---

[11] This analysis is similar to that in a related hospital
compensation case, brought by Plaintiff's Counsel here, in the
Eastern District of Pennsylvania.  The district court there
found that "due to the inextricability of ERISA benefit plans
from the relationship between the parties and the requested
remedy, Plaintiffs' state claims are preempted." *Lynn* v.
*Jefferson Health Sys.*, No. CIV 09-6086, 2010 WL 3656634, at *4
(E.D. Pa. Sept. 15, 2010).  Ultimately, after three amended
complaints had been filed, the District Court decided to dismiss
the case altogether and the Third Circuit affirmed.  *Davis* v.
*Abington Memorial Hosp.*, 765 F.3d 236 (3d Cir. 2014).

participant whose claim for benefits has been denied for a full
and fair review by the appropriate named fiduciary of the
decision denying the claim."  29 U.S.C. § 1133(2).  However,
certain "statutory" ERISA claims, as opposed to "contractual"
claims for plan benefits, do not require exhaustion.  *Madera* v.
*Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005).  The complaint
seeks the value of benefits, while plaintiffs' memoranda explain
that both equitable relief and monetary relief are sought.
Given the near-total lack of information in the complaint about
the claim for benefits, I find it challenging to decide whether
Plaintiffs have an obligation to exhaust their administrative
remedies with respect to certain ERISA claims.  I will
nevertheless dismiss any claims for ERISA benefits as
insufficiently pled with respect to exhaustion.  Irrespective of
the reason for this lacunae in the pleadings, the complaint
fails to allege a necessary element of an ERISA claim in federal
court.

Plaintiffs' complaint appears to contain even fewer factual
allegations related to the benefit plans than the complaint in
the parallel case, Civil Action No. 09-11461-DPW, involving
federal causes of action.  As a result, the reasons set out in
the separate Memorandum and Order issued today with respect to
the federal complaint also support my conclusion that Plaintiffs

have failed to plead a cause of action adequately with respect
to their claims for benefits owed, the value of those benefits,
or the crediting of hours for the calculation of
benefits.  Consequently, I will dismiss those claims as to the
plaintiff Kane.

Given the loosely framed allegations of plaintiffs'
pleadings, the requests for benefits owed are not presented as a
separate cause of action but rather as a dimension to the
monetary relief requested for the various claims.  Accordingly,
I dismiss only so much of each cause of action for plaintiff
Kane as relates to fringe benefits.  This leaves state claims by
plaintiff Kane from which ERISA claims have been excised.  I
turn next to the question whether to remand those claims to
state court.

### 2.   Remand of Non-ERISA State Claims

Although my discretion might properly be exercised to
continue to exercise supplemental jurisdiction under 28 U.S.C. §
1367(a) over the remaining state claims, *see generally Cavallaro
A*, 678 F.3d at 9; *Rodriguez* v. *Doral Mortg. Corp.*, 57 F.3d 1168,
1177 (1st Cir. 1995), I decline to do so here.  Unlike
*Cavallaro*, where Judge Saylor was able fully to resolve the case
on the pleadings without returning it to state court, I have
concluded that the individual claims of plaintiff Kane that do

not implicate ERISA benefits may properly proceed.  Also, unlike the unnamed Class members in *Cavallaro*, plaintiff Kane is a named party — not a putative plaintiff — and her status to bring the case individually is established.  *Cf. Cavallaro A* at 9.

I have generally taken the position that it is inappropriate to continue to sponsor complex litigation involving only in-state residents and state law claims in a federal forum when a case is essentially at the threshold." *Reyes* v. *S.J. Svcs., Inc.*, 2014 WL 5485943, at *12 (D. Mass. Sept. 22, 2014).  *See also Craig* v. *Merrimack Valley Hosp.*, 45 F. Supp. 3d 137, 156-57 (D. Mass. 2014).  As in *Reyes* and *Craig*, where motion to dismiss practice addressing preemption in the labor law context was able to separate the federal claims, which were dismissed, from certain state claims, which were not, "I choose — in the interests of orderly judicial administration and to avoid the necessity that plaintiff must begin this litigation anew — to remand the matter to the state court where it began." *Craig*, 45 F.3d at 157.

## IV. CONCLUSION

On the basis of the preemption dismissal and supplemental jurisdiction analysis set forth above: I ORDER entry of a final judgment dismissing the claims asserted by plaintiffs Hamilton and Cunningham and remanding the claims asserted by plaintiff

Kane (to the degree they do not implicate ERISA benefits, as to which judgment of dismissal will enter) to the Massachusetts Superior Court for Middlesex County from which this case was removed.


/s/ *Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE